UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ernesto Orozco Cardona,<br><br>          Plaintiff,<br><br>v.<br><br>United States of America,<br><br>          Defendant. | Case No.: 16-CV-0546-AJB-BGS<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART THE UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT, (Doc. No. 22); and**<br><br>**(2) DENYING AS MOOT PLAINTIFF'S MOTION TO STRIKE, (Doc. No. 32)** |

Presently before the Court is Defendant United States of America's ("United States") motion for partial summary judgment, (Doc. No. 22), and Plaintiff Ernesto Orozco Cardona's ("Cardona") motion to strike documents attached to the United States' reply in support of its summary judgment motion, (Doc. No. 32). Both motions are fully briefed. (Doc. Nos. 29, 30, 37, 38.) Having reviewed the parties' moving papers in light of controlling authority, the Court finds the material suitable for decision without oral argument pursuant to Local Civil Rule 7.1.d.1. For the reasons set forth below, the Court

**GRANTS IN PART AND DENIES IN PART** the United States' motion and **DENIES AS MOOT** Cardona's motion.

## BACKGROUND

This dispute arises from Cardona's allegedly wrongful arrest and deportation. Cardona, who is a lawful permanent resident of the United States, lost his wallet in 1994. (Doc. No. 1 ¶ 12.)[1] His wallet contained his social security card, driver license, and lawful permanent resident card ("green card"). (*Id.*) Unfortunately, whoever found his wallet used its contents to steal Cardona's identity, evidenced by Cardona's receipt of traffic citations for violations he did not commit and notices from the Social Security Administration and Internal Revenue Service concerning information that was not his own. (*Id.* ¶ 14.)

In 2005, Cardona attempted to renew his green card at the U.S. Citizenship and Immigration Service ("USCIS") office in Chula Vista, but was notified there were three deportation orders under his alien number. (*Id.* ¶ 17.) Cardona provided Immigration and Customs Enforcement ("ICE") Agent Marisa Flores with evidence of the identity theft. (Doc. No. 22-3 at 4.) She also took his picture and fingerprints. (*Id.*) She informed Cardona that the information would be submitted to the Federal Bureau of Investigation ("FBI"), which would contact him in thirty days. (*Id.*) He never received information from either the FBI or Flores, although he followed up with her on three separate occasions. (Doc. No. 1 ¶ 19; Doc. No. 22-3 at 5.) He was also never issued a new green card. (Doc. No. 1 ¶ 21.)

On March 10, 2014, ICE agents entered the private property on which Cardona and his family reside. (Doc. No. 1 ¶ 26.) Because of the early hour, the agents proceeded up the driveway using flashlights. (*Id.* ¶ 27.) From the guesthouse, Cardona's home, Cardona saw the flashlights and thought there were intruders on the property. (*Id.* ¶ 28.) Cardona and his wife went outside to investigate. (*Id.* ¶ 29.) Three agents approached Cardona, and upon identifying himself, they arrested him, stating they had a deportation order against him. (*Id.*

---

[1] The Court cites to the blue CM/ECF-generated document and page numbers located at the top of each page.

¶¶ 30–31.) He was taken to a detention center and was subsequently deported later that day. (*Id.* ¶ 52.)

The following day, on March 11, 2014, Cardona's wife retained an attorney, and after extensive communications between his attorney and the Chief Counsel for ICE, it was discovered that no forensic analysis of Cardona's fingerprints and the other prints on file was conducted. (*Id.* ¶¶ 55, 58.) Upon a proper analysis, it was determined that the prints were not a match. (*Id.* ¶ 58.) As a result, the Department of Homeland Security advised Cardona's attorney to inform Cardona to present himself at the San Ysidro port of entry. (*Id.* ¶ 59.) On March 14, 2014, Cardona did so, and he was transported to the ICE office in downtown San Diego. (*Id.* ¶ 60.)

Cardona instituted this action on March 3, 2016, bringing claims for false arrest and imprisonment, negligence, and intentional infliction of emotional distress. (Doc. No. 1.) On April 24, 2017, the United States filed the instant motion for partial summary judgment. (Doc. No. 22.) Cardona filed an opposition, (Doc. No. 29), and the United States replied, (Doc. No. 30). Thereafter, on July 6, 2017, Cardona filed a motion to strike certain documents attached to the United States' reply. (Doc. No. 32.) That motion is also fully briefed. (Doc. Nos. 37, 38.) This order follows.

## **LEGAL STANDARD**

Summary judgment is appropriate under Rule 56[2] if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The moving

---

[2] All references to "Rules" are to the Federal Rules of Civil Procedure.

party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. *Id.* at 322–23.

If the moving party carries its initial burden, the burden of production shifts to the nonmoving party to set forth facts showing a genuine issue of a disputed fact remains. *Id.* at 330. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

The United States argues Cardona cannot maintain FTCA claims that are predicated on allegedly wrongful acts related to the processing of his green card or USCIS's failure to investigate his report of identity theft. (Doc. No. 22-1 at 13–17.) The United States further asserts Cardona cannot recover under the FTCA for the arrest, detention, and deportation done to effectuate his removal. (*Id.* at 17–22.)[3]

### I. *Whether Cardona can maintain FTCA claims based on the processing of his green card or USCIS's failure to investigate his report of identity theft.*

The United States argues that Cardona cannot maintain FTCA claims that are based on the processing of his green card or USCIS's failure to investigate his report of identity theft because the FTCA's statute of limitations bars any claims based on USCIS's alleged negligence in processing Cardona's green card and investigating his report of identity theft.

---

[3] Cardona argues that the United States' motion should be denied in its entirety because it is untimely. (Doc. No. 29 at 11.) Not so. Rule 56(b) provides that a motion for summary judgment may be brought at any time until thirty days after fact discovery has closed "[u]nless a different time is set by local rule or the court orders otherwise[.]" In this case, Magistrate Judge Skomal issued a scheduling order that required all dispositive motions be filed on or before April 24, 2017. (Doc. No. 15 at 3 ¶ 7.) The United States filed the instant motion on that date. (Doc. No. 22.) Accordingly, the United States' motion is timely under the scheduling order and Rule 56(b).

(Doc. No. 22-1 at 14–17.) Cardona retorts that the continuing violation and equitable tolling doctrines render his lawsuit timely. (Doc. No. 29 at 18–20.)[4]

Under the FTCA, a tort claim against the United States is barred unless it is presented in writing to the appropriate federal agency "within two years after such claim accrues." 28 U.S.C. § 2401(b); *Dyniewicz v. United States*, 742 F.2d 484, 485 (9th Cir. 1984). A claim "accrues" when the plaintiff knows, or has reason to know, of both the existence and the cause of his injury. *See United States v. Kubrick*, 444 U.S. 111, 119–22 (1979); *Hensley v. United States*, 531 F.3d 1052, 1056 (9th Cir. 2008).

Under the continuing violation doctrine, "repeated instances or continuing acts of the same nature, as for instance, repeated acts of sexual harassment or repeated discriminatory employment practices[,]" toll the accrual of a claim until the last unlawful act. *Nesovic v. United States*, 71 F.3d 776, 778 (9th Cir. 1995) (quoting *Sisseton-Wahpeton Sioux Tribe v. United States*, 895 F.2d 558, 597 (9th Cir. 1990)). However, the doctrine applies only where there are continual unlawful acts as opposed to continual ill effects from the original act. *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981).

Cardona argues that the continuing violation doctrine applies because "[t]he failure to initiate an investigation [and] notate the file of the identity theft[] are not unrelated discreet acts." (Doc. No. 29 at 19.) Rather, he asserts "[t]hese acts are sufficiently linked to the unlawful tortious conduct by the Defendant on March 10, 2014 and thus constitutes a continuing violation on behalf of the Defendant." (*Id.*) Cardona misconstrues the scope of the doctrine. Unlike a situation where an employee is subjected to multiple discrete instances of sexual harassment—a situation where the doctrine does apply, *Nesovic*, 71 F.3d at 778—the instant case is more appropriately characterized as continual ill effects.

---

[4] The United States also argues that the allegations of government wrongdoing lack the private person analog required by the FTCA, and the United States has not waived sovereign immunity for claims based on misrepresentation. (Doc. No. 22-1 at 13–15.) Because the Court agrees that Cardona's claims are time barred to the extent he seeks redress for the conduct that occurred in 2005, the Court does not reach these arguments.

The Ninth Circuit's decision in *Ward v. Caulk*, 650 F.2d 1144 (9th Cir. 1981), is illustrative. There, the plaintiff, Ward, sued for the defendants' failure to promote him in May 1975. *Id.* at 1146. In his complaint to the Equal Employment Opportunity Commission ("EEOC") in June 1977, Ward asserted that this failure was a discriminatory action. *Id.* The district court dismissed the complaint as untimely. *Id.* He amended the complaint, asserting that in April 1977, the defendant stated that had he known Ward was applying for another job with the County, he would have made sure Ward did not get the job. *Id.* The district court dismissed the complaint again. *Id.* On appeal, Ward contended he alleged a continuing violation, asserting the defendant's statement in April 1977 demonstrated "the ongoing nature of the violation." *Id.* at 1146–47. The Ninth Circuit readily rejected this contention: "Ward's reasoning is incorrect. A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation. Hence, continuing non-employment resulting from an original action is not a continuing violation." *Id.* at 1147 (citing *Collins v. United Airlines, Inc.*, 514 F.2d 594, 596 (9th Cir. 1975)).

Here, the government actors' failure to provide Cardona with a new green card or investigate his complaint of identity theft is "linked," as Cardona contends, to his 2014 deportation. (Doc. No. 29 at 19.) But, contrary to Cardona's position, the two sets of conduct are linked by virtue of the latter being a continual effect of the former. Similar to *Ward*, "continuing [deportability] resulting from an original action is not a continuing violation." 650 F.2d at 1147. As such, the continuing violation doctrine does not render timely this lawsuit to the extent it is predicated on the conduct that occurred in 2005. *See Walker v. United States*, No. 1:02-cv-05801-AWI-GSA-PC, 2009 WL 3011626, at *1, *4 (E.D. Cal. Sept. 17, 2009) (noting the continual violation doctrine did not apply where the plaintiff was transferred to a facility and contracted Valley Fever outside the limitations period even though he still suffered injuries as a result of the transfer).

Equally unpersuasive is Cardona's assertion that equitable tolling applies. It is undisputed that the FTCA's statute of limitations is nonjurisdictional in nature and may be

6

16-CV-0546-AJB-BGS

equitably tolled. *See generally United States v. Kwai Fun Wong*, 135 S. Ct. 1625 (2015). Although Cardona identifies equitable tolling as applicable to the instant matter, he neither identifies the test nor explains how he satisfies it. (Doc. No. 29 at 19–20.)

"[L]ong-settled equitable-tolling principles" instruct that "'[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way.'" *Credit Suisse Secs. LLC v. Simmonds*, 566 U.S. 221, 227 (2012) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (emphasis omitted). The party seeking equitable tolling "bears a heavy burden to show that []he is entitled to equitable tolling, 'lest the exceptions swallow the rule[.]'" *Rudin v. Myles*, 781 F.3d 1043, 1055 (9th Cir. 2014) (quoting *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010)). The Supreme Court has instructed that the equitable tolling doctrine is "to be applied sparingly." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

The first "diligence prong [] covers those affairs within the litigant's control[.]" *Menominee Indian Tribe v. United States*, 136 S. Ct. 750, 756 (2016). The diligence element applies to prevent equitable tolling "when a litigant was responsible for its own delay." *Id.* (emphasis omitted). "The standard for reasonable diligence does not require an overzealous or extreme pursuit of any and every avenue of relief. It requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances." *Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir. 2011). The Ninth Circuit has held that "[c]entral to the analysis is whether the plaintiff was 'without any fault' in pursuing his claim." *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013) (citation omitted).

The second prong requires the party seeking equitable tolling to establish "that some extraordinary circumstance stood in his way and prevented timely filing" of his claims. *Menominee Indian Tribe*, 136 S. Ct. at 755 (citation omitted). This element "is meant to cover matters outside" of the litigant's "control." *Id.* at 756. This prong may be satisfied by, for example, demonstrating "[t]he Supreme Court's subsequent overruling of [] controlling precedent" that a litigant relied on in delaying the filing of an action in federal

court. *Harris v. Carter*, 515 F.3d 1051, 1057 (9th Cir. 2008).

In opposing the United States' summary judgment motion, Cardona's argument that equitable tolling applies states, in full, the following:

> [C]laims under the FTCA are subject to tolling. Should the Court find that the continuing violations [*sic*] does not apply, the Plaintiff [*sic*] claims should nonetheless be tolled to the time he discovered his injury, which was on March 10, 2014, on equitable grounds.

(Doc. No. 29 at 20.) It should go without saying that Cardona has failed to carry his heavy burden. The record indicates that in 2005, after attempting to renew his green card and providing Flores with his evidence of identity theft, Cardona followed up with Flores on three separate occasions until she told him to stop contacting her. (Doc. No. 1 ¶ 19.) However, he does not indicate that he did anything else to pursue his claim of identity theft. This inaction does not demonstrate diligence. Likewise, Cardona does not identify any extraordinary circumstances that prevented him from timely filing suit on the 2005 conduct. While he asserts he did not discover his injury until the day he was taken into ICE custody, this representation is belied by the complaint itself. Cardona was clearly aware that no action had been taken to resolve his residence status and identity theft situation given that he was refused unemployment benefits in 2006 after he was laid off because his green card was expired and the deportation orders showed up on his record. (*Id.* ¶ 22.) As such, Cardona has failed to establish the existence of a genuine issue of material fact as to equitable tolling's applicability.

For all these reasons, the Court finds that Cardona's claims are time barred to the extent he predicates his causes of action on the processing of his green card or USCIS's failure to investigate his report of identity theft back in 2005.

## II. *Whether Cardona can maintain FTCA claims based on his arrest, detention, and deportation.*

The United States argues that Cardona cannot maintain his FTCA claims to the extent they are predicated on his arrest, detention, and deportation done to effectuate his removal because (1) 8 U.S.C. § 1252(g) strips the Court of subject matter jurisdiction to

entertain such suits; and (2) the United States is entitled to absolute prosecutorial immunity. (Doc. No. 22-1 at 17–22.) Cardona responds that § 1252(g)'s prohibition does not apply to this case because the statute applies only to discretionary decisions involving the commencement of proceedings, adjudication of cases, or execution of removal orders. (Doc. No. 29 at 20–22.) Because the immigration officials were required to undertake a fingerprint analysis, Cardona reasons that § 1252(g) does not strip the Court of subject matter jurisdiction over his lawsuit. (*Id.* at 17, 20–22.) The United States responds that the Fifth and Tenth Circuits have squarely rejected this argument, and many decisions from the Ninth Circuit and its district courts necessarily assume that § 1252(g) applies to any case involving the commencement of proceedings, adjudication of cases, or execution of removal orders, even if immigration officials neglected to follow duties imposed by statute. (Doc. No. 30 at 2–7.)[5]

8 U.S.C. § 1252(g) provides, in pertinent part, "[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." As the Supreme Court explained, "[Section 1252(g)] applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (quoting 8 U.S.C. § 1252(g)). Claims "arise from" one of the three enumerated decisions when they are "connected directly and immediately with a 'decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders.'" *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 943 (5th Cir. 1999).

---

[5] The United States also asserts § 1252(g) reaches not only formal administrative proceedings but also "removal procedures initiated and executed by immigration officers without review by an immigration judge." (Doc. No. 22-1 at 18.) Cardona does not dispute the United States' understanding of Ninth Circuit case law that stands for this proposition; accordingly, the Court does not address this contention.

9

To the extent Cardona seeks redress for his arrest, that action falls squarely within the confines of § 1252(g) because it is directly connected with the decision to execute the reinstatement of removal. *See Sissoko v. Rocha*, 509 F.3d 947, 949 (9th Cir. 2007) (finding § 1252(g) barred false arrest claim for money damages, alleging that immigration official wrongfully took plaintiff into custody, because plaintiff's claim "arose from [the official's] decision to commence expedited removal proceedings")[6]; *Alcaraz v. United States*, No. C–13–511 MMC, 2013 WL 4647560, at *2 (N.D. Cal. Aug. 29, 2013) (dismissing claim for lack of subject matter jurisdiction where plaintiff challenged execution of removal order that violated mandatory stay, finding claim fell squarely within meaning of § 1252(g)). However, Cardona's lawsuit is also predicated on the immigration officials' failure to follow the procedure set forth in 8 C.F.R. § 241.8(a)(2). That section requires immigration officials to undertake a fingerprint analysis prior to deporting an individual in disputed cases:

> In establishing whether an alien is subject to [removal by reinstatement of a prior removal order], the immigration officer shall determine the following: . . . The identity of the alien, *i.e.*, whether the alien is in fact an alien who was previously removed, or who departed voluntarily while under an order of exclusion, deportation, or removal. In disputed cases, verification of identity shall be accomplished by a comparison of fingerprints between those of the previously excluded, deported, or removed alien contained in Service records and those of the subject alien. In the absence of fingerprints in a disputed case the alien shall not be removed pursuant to this paragraph.

8 C.F.R. § 241.8(a)(2). Here, it is undisputed that Cardona asserted he was not the person who was the subject of the removal order. (*See* Doc. No. 22-3 at 30, 38.) It is further undisputed that the immigration officials performed a fingerprint analysis only after deporting Cardona. (*See id.* at 34; *see also* Doc. No. 1 ¶ 58.) This conduct clearly violated the statute, which unambiguously provides that where an alien's identity is disputed and a fingerprint comparison is not conducted, "the alien **shall not** be removed . . . ." 8 C.F.R. §

---

[6] For a full recitation of this case's background, see *Sissoko v. Rocha*, 440 F.3d 1145 (9th Cir. 2006).

241.8(a)(2) (emphasis added).

The United States cites to a plethora of district court cases that have found § 1252(g) applies "even in cases of detentions or deportations being performed contrary to statute or regulation, or otherwise erroneously." (Doc. No. 22-1 at 19.) However, the United States ignores a significant difference between the proffered cases and the instant case: Those cases all involved challenges to one of the three discrete decisions enumerated in the statute or conduct arising from those decisions.[7] As such, the Court finds the cases cited distinguishable and unpersuasive.

This conclusion is in keeping with the Supreme Court's admonition that § 1252(g) is narrowly construed to apply only to the three discrete actions enumerated in the statute itself. *See Reno*, 525 U.S. at 482. The Supreme Court observed,

> There are of course many other decisions or actions that may be part of the deportation process—such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order.
>
> It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.

*Id.* Simply stated, the facts of this case take the bulk of Cardona's claims outside the scope of § 1252(g). On this ground, the Court rejects the United States' argument that § 1252(g) bars Cardona's lawsuit to the extent it is predicated on the immigration officials' failure to conduct a fingerprint analysis and the damages that flowed therefrom, including Cardona's deportation. *See United States v. Hovsepian*, 359 F.3d 1144, 1155–56 (9th Cir. 2004) (en

---

[7] *See, e.g.*, *Hodgson v. United States*, No. SA:13–CV–702, 2014 WL 4161777, at *8 (W.D. Tex. Aug. 19, 2014) (decision to commence proceedings); *Kareva v. United States*, 9 F. Supp. 3d 838, 844–45 (S.D. Ohio Mar. 27, 2014) (decision to execute removal order); *Alcaraz*, 2013 WL 4647560, at *2 (decision to execute removal order); *Nakamura v. United States*, No. 10–CV–2797 (FB)(RML), 2012 WL 1605055, at *5 (E.D.N.Y. May 8, 2012) (decision to commence proceedings).

banc) ("[Section 1252(g)] does not bar the injunction proceeding here [] because the gravamen of Hovsepian's claim does not arise from the Attorney General's decision or action to commence proceedings, adjudicate cases, or execute removal orders."); *Avalos-Palma v. United States*, No. 13-5481(FLW), 2014 WL 3524758, at *6–8 (D.N.J. July 16, 2014) (finding § 1252(g) did not bar plaintiff's FTCA claims, which arose "from ICE's failure to abide by the [mandatory] stay, not from the execution of his removal order"); *Turnbull v. United States*, No. 1:06cv858, 2007 WL 2153279, at *4–5 (N.D. Ohio July 23, 2007) ("[T]he focus of the present lawsuit is the damages that flowed from defendants' refusal to abide by the stay order issued in the habeas proceeding and the forced deportation that followed. Because plaintiff's action does not arise from defendants' original decision to execute a removal order, § 1252(g) does not rob this Court of subject matter jurisdiction.").

The United States also argues it is immune from suit on the basis of absolute prosecutorial immunity. (Doc. No. 22-1 at 20–22; Doc. No. 30 at 7–8.) Prosecutors are absolutely immune from civil suits for damages that challenge activities related to the initiation and presentation of criminal prosecutions. *Imbler v. Pachtman*, 424 U.S. 409, 422 (1976). "[A]gency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts[,]" including "[t]he decision to initiate administrative proceedings against an individual . . . ." *Butz v. Economou*, 438 U.S. 478, 515–16 (1978). Whether prosecutorial immunity extends to agency officials turns on whether "the functions of prosecutors and [officials] are the same"; if they are, "the immunity that protects them is also the same." *Buckley v. Fitzsimmons*, 509 U.S. 259, 276 (1993). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991).

The Court finds that the United States is immune from suit to the extent that Cardona's claims are predicated on the decision to institute removal proceedings. This action falls squarely within the doctrine's ambit. *Butz*, 438 U.S. at 515–16. However, to

the extent the United States asserts it is absolutely immune from Cardona's claims as they are predicated on the failure to conduct a fingerprint analysis prior to deporting him, that argument is not well taken. The doctrine of absolute prosecutorial immunity is couched in terms of protecting an official's exercise of discretion. *See Butz*, 438 U.S. at 515 (explaining that absolute immunity is necessary because "[t]he discretion which executive officials exercise with respect to the initiation of administrative proceedings might be distorted if their immunity from damages arising from that decision was less than complete"); *Meyers v. Contra Costa Cty. Dep't of Soc. Servs.*, 812 F.2d 1154, 1156 (9th Cir. 1987) ("prosecutorial immunity derives from a need for the exercise of independent judgment in the conduct of public duties").

That Ted Yamada, an attorney with the Office of Chief Counsel, made the final decision to deport Cardona does not suddenly shield the United States with absolute immunity as to all elements of Cardona's claims. (Doc. No. 22-3 at 33–35, 37–38.) The Supreme Court has been "quite sparing" in its recognition of absolute immunity and has refused to extend the doctrine any further than its justification warrants. *Burns*, 500 U.S. at 487. Accordingly, absolute immunity does not extend to providing legal advice to police that probable cause exists to arrest a suspect. *Id.* at 496. Here, Yamada advised the ICE officers that Cardona "is the guy" and to "[g]o ahead and remove him." (Doc. No. 22-3 at 38.) The Court finds this advice is comparable to that of a prosecutor advising police that probable cause exists to arrest.

Yamada and the ICE officers had no discretion to forego a fingerprint analysis prior to deporting Cardona; rather, 8 C.F.R. § 241.8(a)(2) required them to do so. As such, holding the United States civilly accountable for violating that mandate raises none of the concerns the Supreme Court voiced when it extended absolute prosecutorial immunity to agency officials performing functions analogous to that of a criminal prosecutor. Under the circumstances of this case, there was no need "for the exercise of independent judgment." *Meyers*, 812 F.2d at 1156. Indeed, "[a]lthough the absence of absolute immunity for the act of giving legal advice may cause prosecutors to consider their advice more carefully,

13

16-CV-0546-AJB-BGS

'[w]here an official could be expected to know that his conduct would violate statutory or constitutional rights, he should be made to hesitate.'" *Burns*, 500 U.S. at 495 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 524 (1985)). Accordingly, the United States is not immune from Cardona's lawsuit to the extent it is predicated on the failure to conduct a fingerprint analysis and all the damages flowing therefrom, including his deportation.[8]

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** the United States' motion for partial summary judgment to the extent that Cardona's claims are predicated on conduct occurring in 2005 and on Cardona's arrest in 2014 because his arrest arises directly from the United States' decision to reinstate removal. (Doc. No. 22.) In all other respects, the United States' motion is **DENIED**. Because the documents Cardona seeks to strike play no role in the Court's analysis, the Court **DENIES AS MOOT** that motion in its entirety. (Doc. No. 32.)

**IT IS SO ORDERED.**

Dated: August 4, 2017

Hon. Anthony J. Battaglia
United States District Judge

---

[8] Cardona asks the Court to strike the immigration arrest warrant dated February 20, 2014, and Joseph Ferma's declaration discussing this warrant. (Doc. No. 32.) Cardona asserts these documents "go[] to the core" of the United States' summary judgment motion because "whether a lawful arrest was made by [the United States] does have bearing [*sic*] on whether [the United States] can assert prosecutorial immunity[.]" (*Id.* at 32-1 at 9; Doc. No. 38 at 3–4.) Because the Court finds it lacks subject matter jurisdiction pursuant to 8 U.S.C. § 1252(g) over Cardona's claims to the extent they are predicated on his arrest, because these documents are not necessary to that conclusion, and because the Court has found the United States is largely not entitled to prosecutorial immunity, the Court **DENIES** Cardona's motion to strike **AS MOOT**. (Doc. No. 32.)